Statement of Facts.


## CITIZENS' N. GAS CO. v. SHENANGO N. GAS CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF BEAVER COUNTY.

Argued October 8, 1890—Decided November 3, 1890.

(a) The plaintiff, a natural gas company, whose lines were supplied by
eleven wells, purchased and turned in the gas from certain other wells
owned by the defendant company. Subsequently, the defendant com-
pany stopped for a time the supply of gas from the wells sold, when
plaintiff filed a bill for an injunction, damages, and general relief:
1. No notice having been given, when the gas was purchased by the
plaintiff company, that its possession and use was necessary for the
plaintiff's business, and that withholding it would leave the plaintiff
without a sufficient supply for its customers, the measure of damages
for the loss of the gas was its value at defendant's wells.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 67 October Term 1890, Sup. Ct.; court below, No. 3
March Term 1889, C. P. in Equity.

On January 29, 1889, the Citizens Natural Gas Company
filed a bill in equity against the Shenango Natural Gas Com-
pany, praying, upon the facts therein averred and charged:

1. That by preliminary, and perpetual injunction after final
hearing, the defendant company, its officers, etc., be restrained
from shutting off the gas or in any manner interfering with
the wells and pipe lines of the plaintiff, or otherwise in any
manner interfering with the business or works of the plaintiff,
or shutting off the gas from or interfering with any of the
wells or pipe lines mentioned in exhibits A and B, and that
the defendant be restrained from in any manner interfering
with the plaintiff's workmen in making necessary repairs to the
lines as damaged by defendant.

2. That a master be appointed to state an account between
the parties, ascertain and determine the damage which had
been suffered by plaintiff by reason of the wrongful acts of the
defendant as stated; that the same might be set off against the

Statement of Facts.

balance due or to become due to the defendant company by plaintiff, and that the said defendant be decreed to pay to the plaintiff what, if anything, upon the stating of said account and after allowing the set-off aforesaid, appeared to be due to the plaintiff, the plaintiff being ready and willing, and hereby offering to pay to the defendant what, if anything, upon the stating of said account, appeared to be due to them from the plaintiff.

3. For general relief.

The exhibits referred to in the bill and prayers were the following:

EXHIBIT A.

" Memorandum of Agreement, September 11, 1888.

" The Shenango Natural Gas Company trades the following gas wells near Alliquippa, viz.: D. McDonald farm, Nos. 1 and 2; J. McDonald, No. 1; Swogger well; Wilson well, and Strock well; in all, six wells; trade to include casing and tubing now in these wells, excepting and reserving the gates and connections to the Shenango Company. The Citizens' Natural Gas Company to take same subject to present rentals; that is to say, is to take assignment of the leases, or that portion of leases covering these wells, on same conditions and terms as now held by Shenango Company; and, for and in consideration of which wells, the Citizens' Natural Gas Company is to deliver to Shenango Natural Gas Company, at Alliquippa, Baden or New Brighton, twelve thousand five hundred and seventy (12,570) feet of 3-inch line pipe in good condition, or for a portion thereof an equivalent proportion of 4-inch or 6-inch, or both, in like good condition; the 3-inch or other pipe mentioned to be delivered to Shenango Company at points named now, and the wells above named not to be delivered to Citizens' Natural Gas Company until the company shall have completed its new line to the Brush creek well or Economy wells, or otherwise to have gas to replace the gas from the wells traded, which is to be pushed by the Shenango Company now as speedily as possible.

[Signed.] " SHENANGO GAS CO., A. W. MELLON, Treas.
" CITIZENS' NATURAL GAS CO., W. A. MELLON, Treas."

EXHIBIT B.

" Agreement made this 30th day of October, 1888, between

Statement of Facts.

the Shenango Natural Gas Company, a corporation under the laws of Pennsylvania, party of the first part, and the Citizens' Natural Gas Company of Beaver county, also a corporation under the laws of said state, party to the second part, witnesseth:

" That the party of the second part does covenant and agree to and with the party of the first part, that it, the party of the second part, shall and will sell to the party of the first part six thousand (6,000) feet of 2-inch pipe, and deliver the same to Valencia station, on the Pittsburgh and Western railroad, in said state, at a valuation of ten cents per foot, or six hundred dollars ; and shall and will sell to said party of the first part three thousand (3,000) feet of 6-inch pipe, and deliver the same at Alliquippa, Baden and New Brighton, in Beaver county, said state, at a valuation of fifty-five cents per foot, or sixteen hundred and fifty dollars ; and shall and will pay to said party of the first part the following sums of money upon the following named dates, to wit: . . . .

" And in consideration, and upon the condition of and immediately after the performance of the aforesaid covenants and agreements by the party of the second part, the party of the first part does covenant and agree to and with the party of the second part that it will sell and assign to the said party of the second part, three certain leaseholds of lands for gas purposes, all situated in Hopewell township, Beaver county, said state, and granted to, or held by, said party of the first part, as follows: One by C. I. McDonald and wife, containing about ten acres, one by Joseph M. Irons, containing about one acre, one by Agnes W. Carroll, containing about fifteen acres, on each of which leaseholds one well is now drilled and producing gas, said assignment subject to the reservations and conditions of the leases therefor; and that it will sell and deliver to said party of the second part, certain pipe lines and casing in, on, or near said leaseholds, the quantity of the same, as ascertained by both parties, being as follows: . . . . and further the said party of the first part does, in consideration of the sum of one dollar, to it in hand paid, grant to the said party of the second part, the license, revocable upon the non-performance of aforesaid conditions or any one of them, to attach its own pipe lines to, and connect the same with, the pipe lines and wells hereinbefore mentioned, and take the gas produced by said wells ; it

Master's Report.

being expressly understood that title to, and possession of said leaseholds, wells, pipe lines and casing, shall remain in the party of the first part, until the terms of this contract have been fully performed and complied with by the party of the second part.

" In witness whereof,". . . . .

A preliminary injunction having been awarded, the cause was put at issue and referred to *Mr. A. P. Marshall,* appointed examiner and master.

On December 14, 1889, the master filed a report, which was as follows:

The plaintiff, at and before the bringing of this suit, was engaged in boring for and transporting natural gas to its consumers in Rochester, New Brighton and Beaver Falls. The defendant company was at the same time engaged in the same business, but it had no consumers in the county of Beaver, but procured its supply of gas in what was known as the Baden and Sheffield districts, in the county of Beaver, and conveyed it by its own pipe lines to its consumers in the city of New Castle, in Lawrence county, about twenty-five miles distant from its source of supply.

In the early fall of 1888, the defendant company having secured another source of supply in what is known as the Brush creek district, in the county of Butler, and the supply in their Beaver county wells being insufficient, and, as they claimed, practically useless for transportation, at least for so long a distance as to their consumers, determined to abandon the Beaver county source of supply. The plaintiff company hearing of this fact began a correspondence looking to a purchase from the defendant company of its leases, wells, etc., in Beaver county.

After some correspondence and personal interviews, the agreements between the parties were made and executed, marked respectively A and B and hereto attached.

The contention on the part of the plaintiff as to contract A, is, that the defendant failed to push its line to the Brush Creek wells as speedily as possible, and that thereby the plaintiff suffered heavy damages in not getting the gas as soon as contemplated by the contract; that the contract does not fix the time that was contemplated by the parties thereto; and that October 10, 1888, was fixed as the limit for the delivery of the wells

named in contract A, by a verbal contemporaneous agreement. As to contract B, it is complained of by complainant that the delivery of the gas from the wells therein mentioned was to be cotemporaneous with the execution of the contract.

It is alleged in plaintiff's bill that on January 26, 1889, defendant, after the wells in both contracts had been delivered to complainants, retook possession thereof, and shut off the gas therefrom to plaintiff's lines; and that, again on January 29, 1889, defendant went on the premises mentioned in contract B, tore up some of plaintiff's lines, destroyed about eighty feet of pipe and broke some plungers. For these infringements of plaintiff's rights, the plaintiff claims damages. The plaintiff also claims damages for a well mentioned in exhibit B and identified as the well with the bailer in it, alleging that plaintiff was damaged to the extent of $300 by reason of the defendant representing that it was a gas producing well, and that the bailer was only dropped in, while in fact it was stuck in by defendant, and that thereby the well was practically of no account. The plaintiff further claims the equitable interference of the court, on the ground of a $250,000 mortgage that is a lien on the property described in the contracts; and further claims to recover for back rentals that it is alleged it had to pay while the defendant had possession of the wells.

On the part of defendant it is contended, as to contract A: First, that A, being a separate and distinct contract and entirely executed, the bill in this particular is multifarious. Second, that it faithfully performed and kept its covenants in said contract; as to contract B, that its liability and duty must be determined by the contract; as to the taking possession of the wells in contract A, on January 26, 1889, that it was by mistake; that as to taking possession of the wells mentioned in contract B, on January 26 and 29, 1889, it was merely the exercise of a power in said contract reserved. As to any back rentals, it denies, and asserts that plaintiff was to pay all back rentals.

It admits the existence of the $250,000 mortgage, and offers to have it released, as to all the wells, etc., mentioned in contracts A and B, on the payment by plaintiff of what is due to defendant under contract B. As to any damages which plaintiff may be entitled to by reason of the non-delivery of the gas in contracts A and B, if any, its claims shall be measured by the value of gas at place, viz.: at the wells before transportation.

Master's Report.

The plaintiff, admitting its indebtedness to defendant, under contract, claims that it should be allowed to set off all the damages in its bill complained of against its indebtedness under contract B. . . . . In a supplemental bill, relief is prayed in relation to the mortgage, and for exemplary damages for the trespass of January 29, 1889, and that defendant be required to assign and deliver to plaintiff the leaseholds, etc., mentioned in contract B.

The contention that contract A does not express the time at which the wells therein mentioned were to be delivered, is supported on the part of plaintiff only by the testimony of W. A. Mellon, and it is met by the denial on the part of defendant by two witnesses, A. W. Mellon and Jos. W. Craig. These three parties, according to the testimony of W. A. Mellon, were all the parties present at the making of the agreement. It is therefore manifest that this allegation of complainant could not be supported under any rule of law or equity.

It being admitted by complainant that the wells, etc., mentioned in contract A, were delivered to it on November 16 or 17, 1888, and claimed by it and admitted by defendant that plaintiff had performed its part of the covenant in contract A, prior to the hearing of this suit, it would seem to the master that defendant's contention that contract A makes the bill of complaint multifarious must be sustained, and it should therefore be stricken therefrom; also, on the further ground that it is but an attempt to use the equity side of the court for the mere purpose of recovering damages for the breach of contract. . . . .

As to contract B, the fair interpretation of its terms seems to be that complainant had the right to take the gas from and immediately after the execution of the contract, and to use it so long as it kept its covenants in the contract; and, when taken in connection with the mortgage, it would seem to be but equitable that it should use the gas until the mortgage was satisfied, or released as to the premises, or otherwise plaintiff might be obliged to pay the full consideration and afterward have all his property swept away by collecting this mortgage.

As to the claim for rentals. Under all the evidence, this claim does not seem to be sustained, and especially when taken in connection with the agreements as to this particular. Neither

has the claim for damages on account of the well with the bailer in it. The plaintiff seems, according to the evidence, to have had notice of the fact that the bailer was in it before it bought; and the representations, or rather the allegations as to deceit, are unsupported by sufficient testimony to affect the contract, in view of the notice the plaintiff had of the bailer being in the well before it bought. The allegations that defendant neglected the wells after they were sold to plaintiff and before they were delivered, is wholly without support for want of any evidence as to this particular. This leaves only two other matters for consideration.

First. The damages plaintiff sustained by reason of defendant's interfering with the wells on January 26th and 29th. For this they should be compensated, but in the absence of any incidental damage being proved, actual damages only should be allowed. The highest damage proven was $200, and the estimate of Mr. Carroll, who superintended the repairs for plaintiff, was $150. In view of all the evidence, the master concludes that $175 would be a liberal allowance for the actual damages in this particular.

This leaves but one other matter for consideration, viz.: The damages to which complainant is entitled for the retention of the gas from the wells in exhibit B from October 30, 1888, to November 16, of the same year, the date of the delivery of the wells. The plaintiff estimates this damage at from fifteen hundred to two thousand dollars. The defendant contends that the gas from wells such as these was at that time worth but from fifteen to twenty-five dollars per month. The question resolves itself into what is the measure of damages. The complainant contends that they are entitled to whatever incidental damages they are able to show. The defendant contends that it is only liable for the value of gas in place, at the mouth of the wells.

In considering the proposition of complainant, it will be admitted that it had its own line practically at the wells ready to receive and transport the gas from these wells by its own line to its own consumers on October 30, 1888. But it is clearly shown by plaintiff's own evidence that if the gas from these wells had been delivered on October 30, 1888, it would have been turned into a common line with gas from eleven other

wells, and in a commingled mass transported to the consumer of complainant. It does not appear from the testimony what the combined pressure of these eleven other wells was at that time, in a common line, or what the pressure of any of them was at the wells from which the gas was produced. It does appear that the C. I. McDonald well, one of the wells named in exhibit B, was not producing gas at that time, and did not for a considerable time after it was delivered.

But, admitting that all these wells were producing gas at that time, and that they had an average of twenty-five pounds pressure per minute, which is a higher pressure than has been shown they have had at any time since their delivery, yet in the absence of testimony as to the pressure of any of the eleven other wells which were on the line, there is nothing by which the master could determine the comparative value of these wells, or the gas therefrom, to the complainant or the consumer. For the same reason, it is impossible to determine the value of the gas from these wells from a consideration of the receipts and expenditures of the complainant company. It remains, therefore, to consider the contention of the defendant's proposition, the value of the gas in place. . . . .

The master, therefore, from all the testimony, concludes to adopt in this case, as a compensation to the complainant in this particular, the value of the gas in place, and finds the value of the gas from these wells, from October 30, to November 16, 1888, to be $125.

### FINDINGS OF FACT.

1–5. The execution of contracts A and B is admitted. That contract A was fully executed on November 16, 1888, the date of the delivery of the wells therein named to complainant. That defendant company did not agree to deliver the wells mentioned in contract A to plaintiff company on October 1 or not later than October 10, 1888. That defendant company began work on the Brush creek line September 7, 1888, and had it fully completed on November 12, 1888. That the defendant company pushed the work on the Brush creek line as speedily as possible.

6–12. That the wells mentioned in contract B were delivered by defendant to complainant on November 16, 1888. That the leases appurtenant to the wells mentioned in contract B

have not been assigned and delivered by defendant to complainant. That complainant is entitled to an assignment and delivery of these leases. That defendant did not agree to deliver the wells named in contract B at the date of the execution of the contract. That the plaintiff company, at the time of the execution of contract B, had a right to attach its pipes and take the gas from the wells therein named and to use the same. That the defendant company took from the wells named any gas produced therefrom, and used the same after the execution of the contract and up to the 16th of November, 1888. That the plaintiff company is entitled to compensation therefor, and the amount thereof is $125.

13–17. That on January 26, 1889, the defendants took possession of the wells named in contracts A and B, and again, on January 29th, took possession of those named in exhibit B, and tore up eighty feet of pipe of plaintiff and injured some gate valves of complainant. That the taking of the wells named in exhibit A was by mistake. That no incidental damage has been shown. That the complainant is entitled to actual damages for taking possession of the wells in contracts A and B. That these damages are $175.

18, 19. That complainant is entitled to no offset on account of the condition of the C. I. McDonald well, the one with the bailer in it. That complainant is entitled to no offset on account of back rentals.

20, 21. That the mortgage to Thomas Mellon and A. W. Mellon is a lien on the property intended to be conveyed by contracts A and B. That it was not the agreement, nor in the contemplation of the parties, that the property was to pass subject to this mortgage.

22, 23. That there is now due from complainant to defendant on contract B, the sum of $2,361.41 and 3000 feet of 6-inch pipe, at the fixed price of $1,650, and the interest, to wit, $99. That there is due from defendant to complainant the sum of $300.

### CONCLUSIONS OF LAW.

Although a bill is ordinarily open to objection for multifariousness, which contains two distinct subject matters, wholly disconnected with each other, yet if one of them be clearly without the jurisdiction of a court of equity for redress, it seems

that the court will treat the bill as if it were but single, and proceed with the other matter, over which it has jurisdiction, as if it constituted the sole object of the bill: Story Eq. Pl. § 283.

The opinion of the master, therefore, is that the decree should be entered in this case making the preliminary injunction granted against the defendant perpetual as to the wells, etc., named in contract A, and a decree continuing the preliminary injunction granted against the defendant, as to the premises, wells, etc., named in contract B, until the mortgage of Thomas Mellon and A. W. Mellon, trustees, recorded in Beaver, in mortgage book, vol. 29, page 421, is satisfied or released as to the wells, premises, etc., named in contracts A and B, and until due assignments are made to the plaintiff of the leases named in contract B; and thereupon, if the Citizens' Natural Gas Company does not pay to the Shenango Natural Gas Company the balance of the purchase money, with the interest due thereon, and deliver to it the 3000 feet of 6-inch pipe, or pay the equivalent sum of money therefor, to wit, $1,650, with the interest thereon, to wit, $99, within ten days after the satisfaction of said mortgage, or the release thereof, so far as it affects the property intended to be conveyed by contracts A and B, then the preliminary injunction to be dissolved as to the wells, premises, etc., mentioned in contract B; and that the defendant pay the costs of this suit.

Exceptions to the foregoing report having been filed by the defendant, after argument thereof the court, WICKHAM, P. J., filed the following opinion:

It is not necessary to pass separately on each and every exception filed to the master's report in this case.

In the opinion of the court, the master was right in holding that the plaintiff's claim for damages for alleged violation of contract A made the bill multifarious. The objection, that multifariousness can only be reached by demurrer, is not tenable. In Oliver v. Piatt, 3 How. 332, Justice STORY says: " The objection of multifariousness cannot, as a matter of right, be taken by the parties except by demurrer, or plea, or answer, and if not so taken, is deemed to be waived. It cannot be insisted upon by the parties, even at the hearing in the court

Opinion of Court below.

below; although it may at any time be taken by the court, sua sponte, wherever it is deemed by the court to be necessary, or proper, to assist it in the due administration of justice." See, also, 1 Daniell's Ch., 3 Am. ed., 352, and Equity Rule No. 7 of our Supreme Court. The case of Persch v. Quiggle, 57 Pa. 247, cited by the plaintiff's counsel, does not sustain the position that the only way to object to multifariousness is by demurrer. Perhaps, however, it is needless to spend time on this question, as the master has found as a matter of fact that there was no breach by the defendant of contract A, and the court would not be warranted, by the evidence, in reversing this finding. . . . .

The only other matter raised by the exceptions, on either side, which requires serious attention, is the rule adopted by the master for measuring the damages resulting to the plaintiff by the defendant's delay in giving to the plaintiff the use of the gas from the wells mentioned in contract B. The master held that the value of the gas at the wells, which was where it was agreed to be delivered, should govern. In this I think he was right.

The defendant, finding that the wells mentioned in contract B had become useless to it, by reason of diminished pressure, agreed to sell them to the plaintiff for little, if any, more than the value of the pipe and other materials on the premises. The plaintiff, being nearer to its market than was the defendant, could make some use of the wells, and therefore concluded to buy them and use the gas therefrom to increase the supply it already had from numerous other producing wells. When the contract was made, no notice was given the defendant that the immediate possession of the gas under the "license" was necessary to keep going the business of the plaintiff. There is nothing to show that the defendant had reason to apprehend, at the time, that withholding the gas for a week or two would leave the plaintiff without a sufficient supply, or entail loss of custom. The written agreement, and the evidence relating to the transaction, forbid the idea that the parties could have even remotely contemplated that the defendant, for a few days' delay, should be made liable for all the speculative, collateral and consequential damages now claimed by the plaintiff. The remarks of Justice STERRETT in Billmeyer v. Wagner, 91 Pa.

92 (paragraphs 4 and 5 of the opinion), are very applicable to the present case. See also Fleming v. Beck, 48 Pa. 309; Fessler v. Powell, 48 Pa. 407; Pittsburgh Coal Co. v. Foster, 59 Pa. 365; Rogers v. Bemus, 69 Pa. 432. It may be further said that under the peculiar circumstances of this case, any other way of estimating the damages than that adopted and followed by the master would be, as he has well shown, largely guess work.

The master's report, with the exception of a change in the decree recommended, must be confirmed.

And now, to wit: February 28, 1890, all the exceptions filed to the master's report are dismissed, and it is ordered and adjudged that a formal decree be drawn, in substance as follows, viz.:

1. That the defendant be perpetually enjoined from interfering in any way with the leaseholds, wells, etc., conveyed to the plaintiff by contract marked exhibit A.

2. That the defendant, within ten days after the signing of the formal decree by the court, deposit in the prothonotary's office proper assignments of the leases agreed to be assigned to the plaintiff in and by the contract marked exhibit B, and also a sufficient release or satisfaction of the mortgage to Thomas Mellon et al., mentioned in the plaintiff's bill.

3. That the plaintiff pay or tender to the defendant, within ten days after notice of the deposit in the prothonotary's office of the said assignments and release or satisfaction, the several instalments of purchase money found by the master to be due and unpaid on contract marked exhibit B, with interest on each from the time it fell due until the date of payment or tender, less, however, the sum of $300 (damages allowed the plaintiff), with interest thereon from December 10, 1888, to the date last aforesaid; and that the plaintiff shall also, within the ten days aforesaid, deliver or offer to deliver, according to the agreement, to the defendant the 3000 feet of 6-inch pipe mentioned in contract marked exhibit B, together with interest on $1,650, the value of said pipe, from December 10, 1888, to the date of delivery or offer to deliver; or, if the plaintiff cannot or will not deliver or offer the said pipe and interest as last aforesaid, that then, in lieu thereof, it pay or tender, within said ten days,

to the defendant, the said sum of $1,650, with interest from December 10, 1888, to the date of payment or tender.

4. That on full compliance with the requirements of the last paragraph, the plaintiff shall, on motion, be permitted to take from the prothonotary's office the assignments of leases and the release or satisfaction above mentioned, and thereupon the preliminary injunction heretofore awarded shall, so far as it relates to the leases, wells, etc., mentioned in contract marked exhibit B, become and be perpetual; but in the case of the non-compliance by the plaintiff with the said requirements, the injunction shall be dissolved, and thereupon the defendant may elect to revoke the license mentioned and granted in and by the said contract, and retake the premises and property therein agreed to be sold or conveyed, or it may waive that right, and by leave of court, obtained on motion, issue execution for the collection of the several sums of money mentioned in paragraph No. 3 aforesaid, viz., the instalments of purchase money, together with the value of the said pipe, with interest on said sums as aforesaid, less the damages allowed the plaintiff.

5. That if the defendant neglect or refuse to comply with the requirements of paragraph No. 2 aforesaid, the preliminary injunction shall become and remain perpetual.

6. That the defendant pay all the costs of the suit.

A formal decree having been signed, in accordance with the foregoing, the plaintiff took this appeal, specifying that the court erred:

1. In holding that plaintiff's bill was multifarious. The parties, plaintiff and defendant, being the same as those to both contracts A and B, and the subject matter the same, or growing out of the same transactions, the bill cannot be considered multifarious. But even if the bill were multifarious, that question should be raised by demurrer, and comes too late after answer, injunction pendente lite, and reference.

7. In holding that the measure of damages was the value of the gas in place at the wells; also, in finding that the sum to which plaintiff was entitled for the defendant's failure to deliver the gas in the wells named in exhibit B, from October 31, 1888, to November 16, 1888, was $125. He should have found that they were entitled to the sum of $1,500.

Syllabus.

10. In finding that there was due from plaintiff to defendant the sum of $2,361.41, together with 3000 feet of 6-inch pipe or its equivalent, $1,650, with interest; in finding that plaintiff was in any manner indebted to the defendant; and in not finding a balance due from defendant to plaintiff and decreeing its payment.

13. In not making the preliminary injunction perpetual as to the leaseholds, wells, etc., conveyed to the plaintiff by contract B.

*Mr. A. H. Clarke* and *Mr. W. H. S. Thompson*, for the appellant.

Counsel cited: Williams's App., 24 W. N. 365; Morgan v. Bank, 8 S. & R. 73; Hunt v. Gilmore, 59 Pa. 450; Domestic S. M. Co. v. Saylor, 86 Pa. 287; Halfpenny v. Bell, 82 Pa. 128; Persch v. Quiggle, 57 Pa. 247; McDonald v. Scaife, 11 Pa. 385; Pittsb. etc. Ry. Co. v. Lyon, 123 Pa. 140.

*Mr. W. K. Jennings* and *Mr. F. H. Laird* (with them *Mr. John M. Buchanan*), for the appellee.

Per Curiam:

An examination of this record leads us to the conclusion that it is free from error. It could not be discussed intelligently without doing so at great length, and we do not see anything in it to require elaboration.

> The decree is affirmed and the appeal dismissed at the costs of the appellant.